# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: FIRE APPARATUS
ANTITRUST LITIGATION

MDL No. _____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER AND CENTRALIZE RELATED ACTIONS FOR <u>CONSOLIDATED PRETRIAL PROCEEDINGS</u>

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 3

ARGUMENT ............................................................................................................................ 8

I.    Centralization of the Related Actions Is Warranted Under 28 U.S.C. § 1407. ...................... 8

    A.    The Related Actions Involve Common Questions of Fact.......................................... 8

    B.    Centralization Will Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of the Related Actions............................................ 11

    C.    Transfer Under Section 1404(a) Will Not Avoid Multidistrict Litigation................ 13

II.    The Northern District of Illinois Is the Appropriate Transferee District.......................... 14

CONCLUSION ........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016) ................................................................ 17

*In re 7-Eleven Franchise Antitrust Litig.*,
358 F. Supp. 286 (J.P.M.L. 1973) .......................................................................... 8

*In re Aggrenox Antitrust Litig.*,
11 F. Supp. 3d 1342 (J.P.M.L. 2014) ............................................................ 14–15

*In re Air Crash over the S. Indian Ocean, on Mar. 8, 2014*,
190 F. Supp. 3d 1358 (J.P.M.L. 2016) ................................................................ 14

*In re Airline Baggage Fee Antitrust Litig.*,
655 F. Supp. 2d 1362 ........................................................................................... 14

*In re BP p.l.c. Secs. Litig.*,
734 F. Supp. 2d 1376 (J.P.M.L. 2010) ................................................................ 18

*In re BP Prods. N. Am., Inc., Antitrust Litig. (No. II)*,
560 F. Supp. 2d 1377 (J.P.M.L. 2008) ................................................................ 10

*In re Capacitors Antitrust Litig. (No. III)*,
285 F. Supp. 3d 1353 (J.P.M.L. 2017) ................................................................ 10

*Catch Curve, Inc. v. Venali, Inc.*,
2006 WL 4568799 (C.D. Cal. Feb. 27, 2006) ..................................................... 13

*In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*,
--- F. Supp. 3d ----, 2025 WL 2937092 (J.P.M.L. Oct. 1, 2025) ........................ 10

*In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
325 F. Supp. 3d 1374 (J.P.M.L. 2018) ......................................................... 11, 17

*In re Concrete and Cement Additives Antitrust Litig.*,
730 F. Supp. 3d 1381 (J.P.M.L. 2024) .................................................... 9, 10, 18

*In re Constr. Equip. Rental Antitrust Litig.*,
798 F. Supp. 3d 1380 (J.P.M.L. 2025) ................................................................ 17

*In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
949 F. Supp. 2d 1373 (J.P.M.L 2013) ................................................................. 11

*In re Crop Prot. Prods. Loyalty Program Antitrust Litig.,*
  655 F. Supp. 3d 1380 (J.P.M.L. 2023) ................................................................ 14

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.,*
  780 F. Supp. 2d 1379 (J.P.M.L. 2011) ................................................................ 18

*Davis v. A & J Elecs.,*
  792 F.2d 74 (7th Cir. 1986) ........................................................................ 13–14

*In re Deere & Co. Repair Servs. Antitrust Litig.,*
  607 F. Supp. 3d 1350 (J.P.M.L. 2022) ................................................................ 12

*In re Delta Dental Antitrust Litig.,*
  433 F. Supp. 3d 1358 (J.P.M.L. 2020) ................................................................ 17

*In re Elec. Books Antitrust Litig.,*
  846 F. Supp. 2d 1378 (J.P.M.L. 2011) ................................................................ 12

*In re Gas Vent Pipe Antitrust Litig.,*
  380 F. Supp. 799 (J.P.M.L. 1974) ..................................................................... 14

*In re GoodRx & Pharmacy Benefit Manager Antitrust Litig. (No. II),*
  776 F. Supp. 3d 1346 (J.P.M.L 2025) ................................................................... 9

*In re Granulated Sugar Antitrust Litig.,*
  737 F. Supp. 3d 1370 (J.P.M.L. 2024) ................................................................ 12

*In re Int. Rate Swaps Antitrust Litig.,*
  190 F. Supp. 3d 1364 (J.P.M.L. 2016) ................................................................ 18

*In re Loc. TV Advert. Antitrust Litig.,*
  338 F. Supp. 3d 1341 (J.P.M.L. 2018) ................................................................ 17

*In re MultiPlan Health Ins. Provider Litig.,*
  743 F. Supp. 3d 1376 (J.P.M.L. 2024) ................................................................. 9

*In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.,*
  67 F. Supp. 3d 1382 (J.P.M.L. 2014) .................................................................. 17

*In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.,*
  314 F. Supp. 2d 1376 (J.P.M.L. 2004) ................................................................ 17

*In re Pork Direct & Indirect Purchaser Antitrust Litig.,*
  544 F. Supp. 3d 1379 (J.P.M.L 2021) ................................................................. 10

*In re Qualcomm Antitrust Litig.,*
  273 F. Supp. 3d 1373 (J.P.M.L. 2017) ................................................................ 11

*In re RealPage, Inc., Rental Software Antitrust Litig.*,
    2024 WL 993302 (M.D. Tenn. Mar. 7, 2024) ....................................................... 8

*In re Shale Oil Antitrust Litig.*,
    743 F. Supp. 3d 1371 (J.P.M.L. 2024) ......................................................... 9, 13

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    856 F. Supp. 2d 1350 (J.P.M.L 2012) ............................................................ 10

*In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
    492 F. Supp. 3d 1359 (J.P.M.L. 2020) ............................................................ 17

*In re Sulfuric Acid Antitrust Litig.*,
    270 F. Supp. 2d 1379 (J.P.M.L. 2003) ............................................................ 17

*In re Surescripts Antitrust Litig.*,
    608 F. Supp. 3d 629 (N.D. Ill. 2022) ............................................................. 18

*In re Union Pac. R.R. Co. Emp't Practices Litig.*,
    314 F. Supp. 2d 1383 (J.P.M.L. 2004) ............................................................ 14

**Statutes**

28 U.S.C. § 1407 ............................................................................................*passim*

28 U.S.C. § 1407 ............................................................................................*passim*

28 U.S.C. § 1441 .................................................................................................. 4

**Court Rules**

Fed. R. Civ. P. 23 ................................................................................................. 8

Federal Rule of Civil Procedure 42 ....................................................... 7, 12, 23

Rule of Procedure of the Judicial Panel on Multidistrict Litigation 6.2 ......................................... 1

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), Defendants respectfully move the Panel to transfer and centralize the actions listed in the Schedule of Related Actions (the "Related Actions"), and any subsequently filed or removed related actions, to the Honorable John J. Tharp, Jr., United States District Court Judge for the Northern District of Illinois.

In twelve separate putative class actions filed in three different judicial districts, Plaintiffs filed antitrust claims against some or all Defendants alleging the same conspiracies to (i) restrain the production of fire trucks and (ii) exchange competitively sensitive information to increase the price of fire trucks.[1] A thirteenth copycat action is pending in Louisiana state court, and the Defendants named in that action will remove it to federal court in the Middle District of Louisiana, creating a fourth judicial district. Transfer and centralization of the Related Actions to a single judicial district is appropriate here because these actions share common questions of fact and law, and consolidated pretrial proceedings before one court will be for the convenience of parties and witnesses and will promote the just and efficient conduct of the actions.

The criteria for centralization are readily satisfied. *First*, the Related Actions all raise many common questions of fact because they all allege the same conspiracies against the same core Defendants based on virtually identical allegations about Defendants' conduct. The Related Actions also allege the same relevant market and antitrust injury, assert largely identical antitrust claims under Section 1 of the Sherman Act and parallel state statutes, and seek to represent overlapping classes. *Second*, transfer to a single district will be most convenient for the parties and witnesses. It will also promote the just and efficient adjudication of the Related Actions and any

---

[1] Two Plaintiffs also allege violations of Section 7 of the Clayton Act in addition to alleging the same conspiracies as the other Plaintiffs.

subsequently filed related actions given the substantial overlap among them. Indeed, consolidated pretrial proceedings will eliminate duplicative discovery, conserve the resources of the parties, their counsel, and the judiciary, and prevent inconsistent pretrial rulings. For these reasons, the Panel routinely centralizes actions pending across multiple districts, like these, alleging the same antitrust conspiracies.

Centralization under Section 1407 is the appropriate method for consolidation of the Related Actions and any subsequently filed or removed related actions. It is impractical and inefficient to consolidate the Related Actions through other means. Plaintiffs in the District of Massachusetts and the District of New Jersey actions have filed Section 1404(a) motions to transfer to the Eastern District of Wisconsin, where the majority of the Related Actions were brought, but these pending motions will not avoid multidistrict litigation. Section 1404(a) transfer cannot bring all the Related Actions to the Eastern District of Wisconsin. That district does not have personal jurisdiction over *all* Defendants, and the Louisiana case (currently in state court) will likely be pending in the Middle District of Louisiana after Defendants remove it to federal court. Even if all current cases were transferred to the Eastern District of Wisconsin, additional related actions will likely appear in new judicial districts given the scope of Plaintiffs' allegations and the steady stream of actions filed to date. The alleged conspiracies involve thousands of putative class members nationwide who may wish to bring claims in their home jurisdiction. Centralization is therefore appropriate to ensure that *all* related actions, including subsequently filed or removed actions, do not give rise to duplicative litigation in different districts.

The Northern District of Illinois is the appropriate transferee district. Its geographically central and readily accessible location is ideal given the nationwide character of the Related Actions and the wide array of locations of the parties, counsel, and witnesses. The Northern District

of Illinois also offers the judicial experience and resources needed to manage complex antitrust and multidistrict litigation. Judge Tharp, in particular, is a respected and experienced jurist who is well suited to overseeing these actions and is due for his first MDL.

Accordingly, centralizing the Related Actions and any to-be-filed related actions before Judge Tharp in the Northern District of Illinois is warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

The Related Actions concern the U.S. market for fire trucks, also called "fire apparatus." Defendants are manufacturers of fire trucks sold in the United States and their parent corporations,[2] a trade association for manufacturers of fire trucks and related equipment,[3] and former investors in another Defendant.[4] Plaintiffs are municipalities and volunteer fire departments that have allegedly purchased fire trucks manufactured by one or more Defendants since 2016.

Plaintiffs all bring putative nationwide class action antitrust claims against Defendants alleging the same conspiracies to increase the price of fire trucks. The first-filed putative class action, *City of La Crosse v. Oshkosh Corp., et al.*, No. 1:25-cv-01252-BBC (the "*La Crosse* Action"), was filed on August 20, 2025, in the Eastern District of Wisconsin. Since then, eleven

---

[2] Oshkosh Corporation ("Oshkosh") and its wholly owned subsidiary Pierce Manufacturing, Inc. ("Pierce"); REV Group, Inc. ("REV Group") and its wholly owned subsidiaries E-One, Inc., Ferrara Fire Apparatus, Inc., Kovatch Mobile Equipment Corporation, Spartan Fire, LLC, Smeal SFA, LLC, and Smeal LTC, LLC (collectively, the "REV Group Subsidiary Defendants"); and Rosenbauer America, LLC ("Rosenbauer") and its wholly owned subsidiaries Rosenbauer South Dakota, LLC and Rosenbauer Minnesota, LLC (collectively, the "Rosenbauer Subsidiary Defendants").

[3] Fire Apparatus Manufacturers' Association ("FAMA").

[4] American Industrial Partners Capital Fund IV, LP, American Industrial Partners Capital Fund IV (Parallel), LP, and AIP/CHC Holdings, LLC (collectively, the "Investor Defendants") are former investors in REV Group. An additional defendant, AIP, LLC, is also alleged to have had an ownership interest in REV Group.

3

more federal actions were filed in three judicial districts—the Eastern District of Wisconsin, the

District of Massachusetts, and the District of New Jersey—as follows:

- *City of Augusta v. Oshkosh Corp., et al.*, No. 1:25-cv-01543-BBC (E.D. Wis. filed Oct. 7, 2025) (the *Augusta* Action");
- *The Newstead Fire Co., Inc. v. Oshkosh Corp., et al.*, No. 1:25-cv-01693-BBC (E.D. Wis. filed Oct. 31, 2025) (the "*Newstead* Action");
- *City of Onalaska v. Oshkosh Corp., et al.*, No. 1:25-cv-01717-BBC (E.D. Wis. filed Nov. 4, 2025) (the "*Onalaska* Action");
- *City of Philadelphia v. Oshkosh Corp., et al.*, No. 1:25-cv-01801-BBC (E.D. Wis. filed Nov. 14, 2025) (the "*Philadelphia* Action");
- *City of Revere v. AIP, LLC, et al.*, No. 1:25-cv-13462-AK (D. Mass. filed Nov. 19, 2025) (the "*Revere* Action");
- *City of Chelsea v. Fire Apparatus Manufacturers' Association, et al.*, No. 1:25-cv-13643-AK (D. Mass. filed Dec. 2, 2025 ) (the "*Chelsea* Action");
- *Borough of Roseland v. Fire Apparatus Manufacturers' Association, et al.*, No. 2:25-cv-18312-MEF-CF (D.N.J. filed Dec. 9, 2025) (the "*Roseland* Action");
- *City of Ann Arbor v. Oshkosh Corp., et al.*, No. 1:25-cv-01973-BBC (E.D. Wis. filed Dec. 16, 2025) (the "*Ann Arbor* Action");
- *City of Liberty v. Oshkosh Corp., et al.*, No. 1:25-cv-02002-BBC (E.D. Wis. filed Dec. 19, 2025) (the "*Liberty* Action");
- *City of Arcadia v. American Industrial Partners LLC, et al.*, No. 1:25-cv-02005-BBC (E.D. Wis. filed Dec. 22, 2025) (the "*Arcadia* Action"); and
- *Commack Fire District v. Oshkosh Corp., et al.*, No. 1:25-02013-BBC (E.D. Wis. filed Dec. 22, 2025) (the "*Commack* Action").

Most recently, another plaintiff filed a thirteenth putative class action in Louisiana state court. *See*

Ex. M, Compl., *City of Plaquemine v. Oshkosh Corp., et al.*, No. 84877 (La. 18th Dist. filed Dec.

30, 2025) (the "*Plaquemine* Action"). Defendants intend to imminently remove the *Plaquemine*

Action to the Middle District of Louisiana based (at a minimum) on federal question jurisdiction

under 28 U.S.C. § 1441.

All Related Actions name Oshkosh, REV Group, Rosenbauer, and FAMA as Defendants.[5] Nine of the twelve Related Actions also name Pierce—an Oshkosh subsidiary[6]; two include the REV Group and Rosenbauer Subsidiary Defendants;[7] two others include the Investor Defendants and AIP, LLC.[8]

The core claims and allegations are common to all Related Actions. All twelve complaints allege that since January 1, 2016, Defendants conspired to increase the price of fire trucks by (1) restraining the production of fire trucks and (2) exchanging competitively sensitive information through FAMA, in violation of Section 1 of the Sherman Act.[9] All twelve complaints make substantially identical factual allegations. For example, all complaints describe industry-wide changes in the price of fire trucks, the supply of fire trucks, and the demand for fire trucks in virtually the same terms (without actually saying much at all about the manufacturer Defendants' own prices or production).[10] All complaints allege that REV Group, Oshkosh, and Rosenbauer consolidated the putative market for fire trucks through the same series of "roll up" acquisitions.[11]

---

[5] *La Crosse* Compl. at 1; *Augusta* Compl. at 1; *Newstead* Compl. at 1; *Onalaska* Compl. at 1; *Philadelphia* Compl. at 1; *Revere* Compl. at 1; *Chelsea* Compl. at 1; *Roseland* Compl. at 1; *Ann Arbor* Compl. at 1; *Liberty* Compl. at 1; *Arcadia* Compl. at 1; *Commack* Compl. at 1.

[6] *La Crosse* Compl. at 1; *Augusta* Compl. at 1; *Newstead* Compl. at 1; *Philadelphia* Compl. at 1; *Revere* Compl. at 1; *Chelsea* Compl. at 1; *Roseland* Compl. at 1; *Ann Arbor* Compl. at 1; *Liberty* Compl. at 1.

[7] *Chelsea* Compl. at 1; *Roseland* Compl. at 1.

[8] *Revere* Compl. at 1; *Arcadia* Compl. at 1

[9] *La Crosse* Compl. ¶¶ 131–49; *Augusta* Compl. ¶¶ 132–50; *Newstead* Compl. ¶¶ 127–40; *Onalaska* Compl. ¶¶ 158–70; *Philadelphia* Compl. ¶¶ 131–49; *Revere* Compl. ¶¶ 217–34; *Chelsea* Compl. ¶¶ 220–27; *Roseland* Compl. ¶¶ 219–26; *Ann Arbor* Compl. ¶¶ 155–67; *Liberty* Compl. ¶¶ 179–97; *Arcadia* Compl. ¶¶ 158–66; *Commack* Compl. ¶¶ 157–69.

[10] *See La Crosse* Compl. ¶¶ 31–33, 68–85; *Augusta* Compl. ¶¶ 34–36, 71–86; *Newstead* Compl. ¶¶ 39–40, 77–90; *Onalaska* Compl. ¶¶ 43–44, 80–114; *Philadelphia* Compl. ¶¶ 30–32, 68–85; *Revere* Compl. ¶¶ 48–53, 125–152; *Chelsea* Compl. ¶¶ 49–51, 122–51; *Roseland* Compl. ¶¶ 49–51, 122–50; *Ann Arbor* Compl. ¶¶ 51–53, 83–113; *Liberty* Compl. ¶¶ 47–49, 116–33; *Arcadia* Compl. ¶¶ 64–66, 104–20; *Commack* Compl. ¶¶ 42–43, 80–113.

[11] *See La Crosse* Compl. ¶¶ 34–52; *Augusta* Compl. ¶¶ 37–55; *Newstead* Compl. ¶¶ 39–57; *Onalaska* Compl. ¶¶ 43–61; *Philadelphia* Compl. ¶¶ 34–52; *Revere* Compl. ¶¶ 56–98; *Chelsea*

And all complaints allege similar facts regarding FAMA's information exchange program and biannual meetings.[12] All complaints also allege the same relevant market, consisting of all fire trucks sold in the United States,[13] and the same type of antitrust injury, namely, the payment of inflated prices.[14] And all complaints seek to represent overlapping nationwide classes.[15] The same is true of the *Plaquemine* action currently pending in Louisiana state court. The *Plaquemine* complaint alleges the same conspiracies and asserts Sherman Act claims against the same core Defendants based on virtually identical factual allegations as the Related Actions.[16]

By contrast, the operative differences between the Related Actions are minimal. The primary difference is how Plaintiffs allegedly purchased fire trucks. One group of Plaintiffs allegedly purchased fire trucks *directly* from one or more Defendants,[17] while the other group of

---

Compl. ¶¶ 53–83; *Roseland* Compl. ¶¶ 53–83; *Ann Arbor* Compl. ¶¶ 54–72; *Liberty* Compl. ¶¶ 50–69; *Arcadia* Compl. ¶¶ 67–88; *Commack* Compl. ¶¶ 45–60.

[12] *See La Crosse* Compl. ¶¶ 57–67; *Augusta* Compl. ¶¶ 60–70; *Newstead* Compl. ¶¶ 63–76; *Onalaska* Compl. ¶¶ 66–79; *Philadelphia* Compl. ¶¶ 57–67; *Revere* Compl. ¶¶ 109–24; *Chelsea* Compl. ¶¶ 91–116; *Roseland* Compl. ¶¶ 91–116; *Ann Arbor* Compl. ¶¶ 73–82; *Liberty* Compl. ¶¶ 74–115; *Arcadia* Compl. ¶¶ 94–103; *Commack* Compl. ¶¶ 65–78.

[13] *See La Crosse* Compl. ¶ 128; *Augusta* Compl. ¶ 129; *Newstead* Compl. ¶ 113; *Onalaska* Compl. ¶ 134; *Philadelphia* Compl. ¶ 128; *Revere* Compl. ¶ 203; *Chelsea* Compl. ¶¶ 188–90; *Roseland* Compl. ¶¶ 188–90; *Ann Arbor* Compl. ¶ 43; *Liberty* Compl. ¶ 138; *Arcadia* Compl. ¶¶ 55, 63; *Commack* Compl. ¶¶ 32, 37.

[14] *See La Crosse* Compl. ¶ 90; *Augusta* Compl. ¶ 91; *Newstead* Compl. ¶ 33; *Onalaska* Compl. ¶ 33; *Philadelphia* Compl. ¶ 90; *Revere* Compl. ¶ 160; *Chelsea* Compl. ¶¶ 177; *Roseland* Compl. ¶ 176; *Ann Arbor* Compl. ¶ 135; *Liberty* Compl. ¶ 176; *Arcadia* Compl. ¶ 143; *Commack* Compl. ¶ 133.

[15] *See La Crosse* Compl. ¶ 118; *Augusta* Compl. at 1; *Newstead* Compl. ¶ 117; *Onalaska* Compl. ¶ 138; *Philadelphia* Compl. ¶ 118; *Revere* Compl. ¶ 39; *Chelsea* Compl. ¶ 181; *Roseland* Compl. ¶ 180; *Ann Arbor* Compl. ¶ 139; *Liberty* Compl. ¶ 165; *Arcadia* Compl. ¶ 147; *Commack* Compl. ¶ 137.

[16] *See generally Plaquemine* Compl.

[17] *Augusta* Compl. ¶ 15; *Newstead* Compl. ¶ 15; *Philadelphia* Compl. ¶ 10; *Revere* Compl. ¶ 13; *Chelsea* Compl. ¶ 11; *Roseland* Compl. ¶ 11; *Liberty* Compl. ¶ 15.

Plaintiffs allegedly purchased fire trucks *indirectly* through an intermediary source.[18] Because indirect purchasers cannot recover damages under federal antitrust law, those Plaintiffs (and one direct purchaser) also bring claims under state antitrust laws substantively similar to federal law.[19] And four Plaintiffs (both direct and indirect purchasers) bring additional antitrust claims under Section 7 of the Clayton Act challenging Defendants' alleged "roll up" acquisitions.[20]

The Related Actions are all in their infancy. Defendants have not yet responded to any complaints, their deadlines to respond have been extended to allow time to resolve consolidation and transfer issues,[21] and discovery has yet to commence. The direct purchaser and indirect purchaser Related Actions filed in the Eastern District of Wisconsin have been separately consolidated under Federal Rule of Civil Procedure 42(a) on motions by those Plaintiffs.[22] The *Revere*, *Chelsea*, and *Roseland* Plaintiffs have moved to transfer their Related Actions to the Eastern District of Wisconsin under 28 U.S.C. § 1404(a) for consolidation with the direct purchaser Related Actions filed in that district.[23] Those motions to transfer remain pending. Defendants intend to oppose the motions because, as explained below, Section 1404(a) transfer will not avoid

---

[18] *La Crosse* Compl. ¶ 11; *Onalaska* Compl. ¶ 17; *Ann Arbor* Compl. ¶ 13; *Arcadia* Compl. ¶ 12; *Commack* Compl. ¶ 17. The *Plaquemine* complaint does not specify whether the *Plaquemine* plaintiff allegedly purchased trucks directly or indirectly. *See Plaquemine* Compl. ¶ 11.

[19] *La Crosse* Compl. ¶¶ 150–57; *Onalaska* Compl. ¶¶ 171–226; *Ann Arbor* Compl. ¶¶ 168–293; *Liberty* Compl. ¶¶ 198–203; *Arcadia* Compl. ¶¶ 172–235; *Commack* Compl. ¶¶ 170–225.

[20] *Revere* Compl. ¶¶ 235–39; *Chelsea* Compl. ¶¶ 228–32; *Roseland* Compl. ¶¶ 227–31; *Arcadia* Compl. ¶¶ 167–71.

[21] *See* ECF No. 45, *La Crosse* Action; ECF No. 49, *Augusta* Action; ECF No. 28, *Revere* Action; ECF No. 29, *Chelsea* Action; ECF No. 23, *Roseland* Action.

[22] *See* ECF Nos. 42, 49, *La Crosse* Action; ECF Nos. 14–15, 19, *Augusta* Action; ECF No. 3, *Ann Arbor* Action; ECF No. 5, *Liberty* Action; ECF No. 2, *Arcadia* Action; ECF No. 2, *Commack* Action. As a next-best option to centralization under 28 U.S.C. § 1407, Defendants have moved to consolidate both sets of Related Actions pending in the Eastern District of Wisconsin. *See* ECF Nos. 40–41, *La Crosse* Action. That motion remains pending as of this filing.

[23] *See* ECF Nos. 93–94, *Revere* Action; ECF Nos. 32–33, *Chelsea* Action; ECF Nos. 25–26, *Roseland* Action.

multidistrict litigation. *Infra* § I.C. The Investor Defendants and AIP, LLC also intend to oppose Section 1404(a) transfer of the *Revere* Action on personal jurisdiction grounds.[24]

## ARGUMENT

## I.    Centralization of the Related Actions Is Warranted Under 28 U.S.C. § 1407.

"When civil actions involving 1 or more common questions of fact are pending in different districts," this Panel has authority to transfer such actions "to any district for consolidated or coordinated pretrial proceedings." 28 U.S.C. § 1407(a). Centralization is warranted when transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* These criteria are satisfied here.

### A.    The Related Actions Involve Common Questions of Fact.

The Related Actions all present many common questions of fact for purposes of consolidation under Section 1407.[25] All complaints involve the same core Defendants; aver the same conspiracies to restrain the production of fire trucks and to exchange competitively sensitive information through FAMA since January 1, 2016; assert effectively identical antitrust claims under Section 1 of the Sherman Act and parallel state statutes; and allege the same relevant market and the same type of antitrust injury. Furthermore, the alleged conspiracies are based on virtually

---

[24] The Investor Defendants and AIP, LLC join this motion subject to their objections to personal jurisdiction in the Eastern District of Wisconsin and the District of Massachusetts, both in the *Revere* Action and, if and when they are served, in the *Arcadia* Action. *See In re RealPage, Inc., Rental Software Antitrust Litig.*, 2024 WL 993302 (M.D. Tenn. Mar. 7, 2024) (resolving personal jurisdiction actions by transferring actions to districts with personal jurisdiction over defendants and noting the actions would likely be transferred to a multidistrict litigation for pretrial proceedings).

[25] These common questions under Section 1407 do not render class certification appropriate. To the contrary, Defendants maintain that the class certification requirements of Fed. R. Civ. P. 23 are not satisfied in the Related Actions. Importantly, however, "[t]he criteria for a class determination pursuant to Rule 23 of the Federal Rules of Civil Procedure are different from the criteria for transfer pursuant to 28 U.S.C. § 1407." *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973).

identical factual allegations relating to Defendants' conduct and the price and production of fire trucks. Given this overlap, if discovery proceeds in the Related Actions, it will address many of the same issues, including, among many others: (i) whether Defendants have restrained the production of fire trucks; (ii) whether Defendants have exchanged competitively sensitive information through FAMA; (iii) whether Defendants have agreed to restrain production or exchange competitively sensitive information; (iv) whether and to what extent prices for fire trucks have increased; (v) whether Plaintiffs have paid artificially inflated prices for fire trucks; (vi) whether the alleged market of all fire trucks sold in the United States is bounded by reasonable interchangeability of use or cross-elasticity of demand; and (vii) whether and to what extent Defendants wield market power in the relevant market.

These common issues make transfer under Section 1407 proper. The Panel has routinely centralized antitrust cases that, as here, involve the same alleged conspiracies and core allegations. *See, e.g.*, *In re GoodRx & Pharmacy Benefit Manager Antitrust Litig. (No. II)*, 776 F. Supp. 3d 1346, 1348 (J.P.M.L 2025) (finding centralization appropriate where actions "share[d] overlapping complex issues of fact" relating to alleged Sherman Act price-fixing conspiracy between pharmacy benefit managers and independent pharmacies); *In re MultiPlan Health Ins. Provider Litig.*, 743 F. Supp. 3d 1376, 1377 (J.P.M.L. 2024) (same where actions "share[d] factual questions arising from an alleged conspiracy to fix, suppress, and stabilize reimbursement rates paid to healthcare providers . . . in violation of the Sherman Act"); *In re Shale Oil Antitrust Litig.*, 743 F. Supp. 3d 1371, 1372 (J.P.M.L. 2024) (same where actions "share[d] factual questions arising from an alleged price-fixing conspiracy among . . . shale-oil producers"); *In re Concrete and Cement Additives Antitrust Litig.*, 730 F. Supp. 3d 1381, 1382 (J.P.M.L. 2024) (same where actions "share[d] factual questions arising from an alleged price-fixing conspiracy among suppliers of

concrete and cement additives"); *In re Pork Direct & Indirect Purchaser Antitrust Litig.*, 544 F. Supp. 3d 1379, 1380 (J.P.M.L 2021) (same where actions "share[d] factual questions arising from an alleged conspiracy, starting in or around 2009, among leading American pork producers to fix, raise, maintain, and stabilize the price of pork in the United States"). The Panel should centralize the Related Actions here for pretrial proceedings for the same reasons.

Plaintiffs agree that the Related Actions involve common questions of fact. Their motions to consolidate and transfer recognize precisely that. *See* ECF No. 42-1 at 4–5, *La Crosse* Action; ECF No. 15 at 5–6, *Augusta* Action; ECF No. 93-1 at 4, *Revere* Action; ECF No. 33 at 1, *Chelsea* Action; ECF No. 25-1 at 1, *Roseland* Action. That includes both the direct purchaser *and* the indirect purchaser Related Actions. *See* ECF No. 33 at 1, *Chelsea* Action (recognizing that the *Chelsea* Action "presents common issues of law and fact as the nine related [direct and indirect purchaser] actions pending in Wisconsin"); ECF No. 25-1 at 1, *Roseland* Action (same as to the *Roseland* Action). As this Panel recently reiterated, it "has frequently centralized antitrust cases involving direct and indirect purchaser claims that arise from common factual allegations, particularly where multiple related actions are pending." *In re CCell Closed Cannabis Oil Vaporization Sys. & Components Prods. Litig.*, --- F. Supp. 3d ----, 2025 WL 2937092, at *1 (J.P.M.L. Oct. 1, 2025) (quoting *In re Skelaxin (Metaxalone) Antitrust Litig.*, 856 F. Supp. 2d 1350, 1351 (J.P.M.L 2012) (collecting cases)); *see, e.g.*, *In re Concrete*, 730 F. Supp. 3d at 1381; *In re Pork*, 544 F. Supp. 3d at 1380; *In re Capacitors Antitrust Litig. (No. III)*, 285 F. Supp. 3d 1353, 1354 (J.P.M.L. 2017); *In re BP Prods. N. Am., Inc., Antitrust Litig. (No. II)*, 560 F. Supp. 2d 1377, 1378 (J.P.M.L. 2008). Centralization of all direct purchaser and indirect purchaser Related Actions is equally appropriate here.

**B.    Centralization Will Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of the Related Actions.**

Centralization of the Related Actions will serve "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a). This Panel routinely centralizes antitrust actions that "share complex factual issues" and "overlapping putative nationwide classes." *In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1375–76 (J.P.M.L. 2018); *see, e.g.*, *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017). As in these cases, "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary." *In re Chi. Bd.*, 325 F. Supp. 3d at 1376; *accord In re Qualcomm*, 273 F. Supp. 3d at 1375.

Given the significant overlap among the Related Actions' factual allegations, legal claims, and nationwide putative classes, Defendants anticipate that any discovery in the Related Actions will largely overlap. Each Plaintiff will undoubtedly pursue overlapping testimony, documents, and other evidence from Defendants. Indeed, "transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L 2013).

Defendants further anticipate that the parties will raise numerous overlapping pretrial issues, including (among many others) the legal sufficiency of the allegations, the factual sufficiency of the proof adduced in discovery, the amenability of the claims to class-wide adjudication, and the admissibility of expert testimony. Absent consolidated pretrial proceedings, the parties will need to engage in duplicative discovery, motion practice, and other efforts on the

same factual and legal questions in separate actions pending in multiple judicial districts, wasting valuable judicial and party resources and entailing a risk of inconsistent rulings in different Related Actions. Centralization eliminates these inefficiencies, reducing costs for the parties and promoting judicial economy. *See, e.g.*, *In re Granulated Sugar Antitrust Litig.*, 737 F. Supp. 3d 1370, 1371 (J.P.M.L. 2024) (finding centralization appropriate to "eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly as to class certification; and conserve the resources of the parties, their counsel, and the judiciary"); *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1352 (J.P.M.L. 2022) (same). Centralization is particularly appropriate given that the Related Actions are all in their infancy and "have not progressed beyond the filing of the complaints." *In re Elec. Books Antitrust Litig.*, 846 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011).

Here, too, Plaintiffs agree (through their motions to consolidate or transfer) that consolidated pretrial proceedings will serve the convenience of the parties and witnesses and promote judicial economy and efficiency. *See* ECF No. 42-1 at 4–5, *La Crosse* Action; ECF No. 15 at 5–6, *Augusta* Action; ECF No. 93-1 at 9–10, *Revere* Action; ECF No. 33 at 7, *Chelsea* Action; ECF No. 25-1 at 8–9, *Roseland* Action. As the *Augusta*, *Newstead*, and *Philadelphia* Plaintiffs put it in one of their filings, "[t]here are clear efficiencies and case management benefits to be gained by having one judge oversee the direct and indirect purchaser actions in a single consolidated docket proceeding on the same track." ECF No. 57 at 1, *Augusta* Action. Yet, while Plaintiffs seek partial consolidation through Federal Rule of Civil Procedure 42(a) and Section 1404(a), centralization under Section 1407 is better suited to serving the interests of consolidation because the *Revere*, *Chelsea*, and *Roseland* Plaintiffs' pending motions to transfer will not resolve the multidistrict character of this litigation.

### C.    Transfer Under Section 1404(a) Will Not Avoid Multidistrict Litigation.

When "there is no reasonable prospect that the multidistrict character of [a] litigation will be resolved through pending Section 1404 transfer," centralization under Section 1407 is preferred. *In re Shale Oil*, 743 F. Supp. 3d at 1372. That is the case here because the *Revere*, *Chelsea*, and *Roseland* Plaintiffs' pending motions to transfer the Related Actions pending in the District of Massachusetts and the District of New Jersey to the Eastern District of Wisconsin will not avoid multidistrict litigation.

*First*, even if transfer motions are granted, they would leave the copycat *Plaquemine* Action pending in the Middle District of Louisiana once Defendants remove it from Louisiana state court. *See id.* (granting centralization when a competing transfer motion was only filed in one district and "related actions [had] been filed in two additional districts since the close of briefing").

*Second*, the success of these motions is questionable because the Eastern District of Wisconsin does *not* have personal jurisdiction over all Defendants, namely the Investor Defendants and AIP, LLC in the *Revere* Action pending in the District of Massachusetts. Unlike in the case of Section 1407 transfer, personal jurisdiction over all defendants is a requirement for Section 1404(a) transfer. *See, e.g.*, *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006) (noting that requirement to establish a matter "'might have been brought' in the district to which transfer is sought" under 28 U.S.C. § 1404(a) "includes demonstrating that . . . personal jurisdiction . . . would have been proper if the plaintiff had filed the action in the district to which transfer is sought" (citing *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960))). The Investor Defendants and AIP, LLC are not subject to general or specific personal jurisdiction in the Eastern District of Wisconsin. These entities do not transact business in that district, and the Seventh Circuit does not recognize a conspiracy exception for personal jurisdiction. *See Davis v. A & J*

13

*Elecs.*, 792 F.2d 74, 76 (7th Cir. 1986). Thus, the Section 1404(a) transfer motions will likely leave a Related Action pending in the District of Massachusetts as well.

*Third*, other plaintiffs will likely file new related cases in districts outside of the Eastern District of Wisconsin. Indeed, related actions have steadily been filed—twelve in the last three months—in four different jurisdictions to date, and there are allegedly "thousands" of putative class members nationwide, *e.g.*, *La Crosse* Compl. ¶ 121. The likelihood of new related actions arising in different districts weighs heavily in favor of centralization. *See In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 655 F. Supp. 3d 1380, 1382 (J.P.M.L. 2023) ("We view this potential for more tag-along actions and the uncertainty of the result and timing of rulings on any future Section 1404 transfer motions as tipping the balance in favor of centralizing this complex antitrust litigation."); *In re Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009) (finding Section 1407 "the more efficient method of congregating" related actions given "the possibility of additional actions arising in other districts"); *In re Union Pac. R.R. Co. Emp't Practices Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (same); *In re Gas Vent Pipe Antitrust Litig.*, 380 F. Supp. 799, 800 (J.P.M.L. 1974) (same); *see also In re Air Crash over the S. Indian Ocean, on Mar. 8, 2014*, 190 F. Supp. 3d 1358, 1360 n.2 (J.P.M.L. 2016).

Accordingly, centralization under Section 1407 is the only reasonable means to resolve the multidistrict nature of the litigation.

**II.     The Northern District of Illinois Is the Appropriate Transferee District.**

To determine the appropriate transferee district, the Panel considers a number of factors, including (i) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (ii) the location of "relevant witnesses and evidence"; (iii) the support of parties for centralization in the district; and (iv) the experience of the transferee judge and district

in navigating "the nuances of complex and multidistrict litigation." *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). Because there is no logical center of gravity for this nationwide litigation, these factors point to the Northern District of Illinois—a geographically central and accessible district—as the appropriate forum.

The first two factors weigh heavily in favor of a central and accessible district given the geographic dispersal of the parties, potential witnesses, and relevant evidence. Together, the parties and their counsel of record in the Related Actions hail from over thirty cities in seventeen states and the District of Columbia. Plaintiffs are located in twelve different cities in nine different states including three states in the Midwest—Missouri, Wisconsin, Michigan, Pennsylvania, New Jersey, New York, Massachusetts, Maine, and California (and, soon, Louisiana).[26] Defendants are likewise dispersed, with significant Midwest presence: Oshkosh, Pierce, and REV Group are based in Wisconsin; Rosenbauer is based in South Dakota; FAMA is based in Florida; the REV Group and Rosenbauer Subsidiary Defendants are based in numerous states throughout the country, including in the Midwest, West, Southeast, and Northeast; and the Investor Defendants and AIP, LLC are based in New York.[27] Pierce's, REV Group's, and Rosenbauer's manufacturing plants— another potential source of relevant witnesses and evidence—are also located in many states all over the country, including in the Midwest, West, Southeast, and Northeast.[28] The parties' counsel are likewise dispersed across the country, with the majority of lawyers located up and down both coasts. And the Related Actions all involve nationwide putative classes with "thousands" of

---

[26] *See La Crosse* Compl. ¶ 10; *Augusta* Compl. ¶ 14; *Newstead* Compl. ¶ 14; *Onalaska* Compl. ¶ 17; *Philadelphia* Compl. ¶ 9; *Revere* Compl. ¶ 12; *Chelsea* Compl. ¶ 10; *Roseland* Compl. ¶ 10; *Ann Arbor* Compl. ¶ 11; *Liberty* Compl. ¶ 14; *Arcadia* Compl. ¶ 14; *Commack* Compl. ¶ 17.
[27] *E.g.*, *La Crosse* Compl. ¶¶ 13, 15, 17, 21–22, 25; *Revere* Compl. ¶¶ 19, 23–25; *Chelsea* Compl. ¶¶ 16–21, 25–26.
[28] *E.g.*, *Chelsea* Compl. ¶¶ 13, 16–21, 25–26.

alleged class members located in every state and territory of the United States.[29] As a result, no single district is the focal point for the Related Actions.

The Northern District of Illinois offers a central and convenient location for this geographically dispersed litigation. It is proximate to many of the parties, counsel, potential witnesses, and relevant evidence, and easily accessible to all others. Chicago is a major metropolitan area at the crossroads of the country, with two major airports within twenty miles of the courthouse. O'Hare International Airport is the most connected airport in the United States.[30] It offers 1,040 daily direct flights to 171 U.S. cities.[31]



---

[29] *See, e.g.*, *La Crosse* Compl. ¶ 121.
[30] *O'Hare Named #1 Most Connected Airport In The United States*, Office of the Mayor, https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2025/september/ohare-most-connected.html
[31] *See Non-stop Service*, O'Hare International Airport, https://www.flychicago.com/ohare/myflight/non-stop/pages/default.aspx

O'Hare International Airport is complemented by Midway International Airport, which services 78 U.S. cities on 196 daily direct flights.[32] Between the two airports, nearly all parties—25 out of 26—have access to direct flights to Chicago. *See* App'x 1.

For similar reasons, the Panel has frequently recognized the Northern District of Illinois as a "geographically central and accessible forum" for nationwide multidistrict litigation without a clear focal point. *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020); *see, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016); *In re Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1379 (J.P.M.L. 2004). The same is true here.

The Northern District of Illinois is also well equipped to manage this nationwide antitrust class action litigation. The Panel has frequently remarked upon the experience and ability of the Northern District of Illinois's bench to oversee complex and multidistrict litigation, including in the antitrust context. *See, e.g.*, *In re Constr. Equip. Rental Antitrust Litig.*, 798 F. Supp. 3d 1380, 1381 (J.P.M.L. 2025); *In re Delta Dental*, 433 F. Supp. 3d at 1359; *In re Loc. TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018); *In re Chi. Bd.*, 325 F. Supp. 3d at 1376. Equally important are the Northern District of Illinois's resources and capacity "to efficiently manage" complex and multidistrict litigation. *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1359, 1363 (J.P.M.L. 2020); *see, e.g.*, *In re Navistar Maxxforce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 67 F. Supp. 3d 1382, 1384 (J.P.M.L. 2014); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003). In particular, Judge Tharp is a respected jurist with over ten years of experience, including experience managing consolidated

---

[32] *See Non-stop Service*, Midway International Airport, https://www.flychicago.com/midway/myflight/non-stop/pages/default.aspx.

antitrust class actions, and no MDLs on his docket. *See, e.g.*, *In re Surescripts Antitrust Litig.*, 608 F. Supp. 3d 629 (N.D. Ill. 2022). The Panel routinely selects such an "able and experienced jurist who has not had the opportunity to preside over an MDL." *In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016); *accord, e.g.*, *In re Concrete*, 730 F. Supp. at 1381.

The Northern District of Illinois is the appropriate district for centralization of the Related Actions even though no Related Actions are currently pending there. The Panel has recognized that the location of currently filed cases "is not a particularly significant factor" where, as here, "potential plaintiffs and putative class members will reside in every corner of the country and defendants," not to mention named Plaintiffs, "are located in several states." *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011); *accord In re BP p.l.c. Secs. Litig.*, 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010). And because all Related Actions "are at an early stage, transfer to another district should not be disruptive." *In re Darvocet*, 780 F. Supp. 2d at 1382; *accord In re BP*, 734 F. Supp. 2d at 1379.

On balance, therefore, the relevant factors support centralizing the Related Actions before Judge Tharp in the Northern District of Illinois.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel grant their motion and order the Related Actions set forth on Schedule A centralized and transferred to the Honorable John J. Tharp, Jr., United States District Court Judge for the Northern District of Illinois.

Dated: January 15, 2026                              Respectfully submitted,


/s/ *Reid Schar*                                          /s/ *Arthur J. Burke*
Reid Schar                                                   Arthur J. Burke
JENNER & BLOCK LLP                          DAVIS POLK & WARDWELL LLP
525 Market Street, 29th Floor               450 Lexington Ave
San Francisco, CA 94105                       New York, NY 10017

(628) 267-6800
rschar@jenner.com

Douglas E. Litvack
Jariel A. Rendell
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 637-6357
dlitvack@jenner.com
jrendell@jenner.com

Jacob P. Wentzel
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 222-9350
jwentzel@jenner.com

*Counsel for Defendants Oshkosh Corporation and Pierce Manufacturing, Inc.*

/s/ *Marcella S. Spoto*
John P. Loringer
Andrew Scarpace
Marcella S. Spoto
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
555 East Wells Street, Suite 1730
Milwaukee, WI 53202
(414) 292-3019
john.loringer@wilsonelser.com
andrew.scarpace@wilsonelser.com
marcella.spoto@wilsonelser.com

*Counsel for Defendant Fire Apparatus Manufacturers' Association*

(212) 450-4000
arthur.burke@davispolk.com

Mari Grace
Sean Stefanik
DAVIS POLK & WARDWELL LLP
1050 17th Street, NW
Washington, DC 20036
(202) 962-7000
mari.grace@davispolk.com
sean.stefanik@davispolk.com

*Counsel for Defendants REV Group, Inc., E-One, Inc., Ferrara Fire Apparatus, Inc., Kovatch Mobile Equipment Corp., Spartan Fire, LLC, Smeal SFA, LLC, and Smeal LTC, LLC*

/s/ *Ashley B. Eickhof*
Ashley B. Eickhof
Creighton J. Macy
Stephen T. Loertscher
BAKER & MCKENZIE LLP
815 Connecticut Ave NW
Washington, DC 20006
(202) 452-7000
ashley.eickhof@bakermckenzie.com
creighton.macy@bakermckenzie.com
stephen.loertscher@bakermckenzie.com

*Counsel for Defendants Rosenbauer America, LLC, Rosenbauer South Dakota, LLC, and Rosenbauer Minnesota, LLC*

/s/ *Paul C. Cuomo*
Paul C. Cuomo
Ed Duffy
Alexander Kraszewski
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
(202) 639-7700
paul.cuomo@bakerbotts.com
ed.duffy@bakerbotts.com
alexander.kraszewski@bakerbotts.com

*Counsel for Defendants AIP, LLC, American Industrial Partners Capital Fund IV, LP, American Industrial Partners Capital Fund IV (Parallel), LP, and AIP/CHC Holdings, LLC*

**Appendix 1**

| Party | Nearest Major Airport | Nonstop Flight to ORD or MDW |
|---|---|---|
| City of La Crosse | Rochester (RST) or La Crosse (LSE) | Yes |
| City of Augusta | Portland (PWM) | Yes |
| Newstead Fire Co. | Buffalo (BUF) | Yes |
| City of Onalaska | Rochester (RST) or La Crosse (LSE) | Yes |
| City of Philadelphia | Philadelphia (PHL) | Yes |
| City of Revere | Boston (BOS) | Yes |
| City of Chelsea | Boston (BOS) | Yes |
| Borough of Roseland | Newark (EWR) | Yes |
| City of Ann Arbor | Detroit (DTW) | Yes |
| City of Liberty | Kansas City (MCI) | Yes |
| City of Arcadia | Los Angeles (LAX) | Yes |
| Commack Fire District | LaGuardia (LGA) | Yes |
| Oshkosh Corporation | Appleton (ATW) | Yes |
| Pierce Manufacturing, Inc. | Appleton (ATW) | Yes |
| REV Group, Inc. | Milwaukee (MKE) | Yes |
| Rosenbauer America, LLC | Sioux Falls (FSD) | Yes |
| Fire Apparatus Manufacturers' Association | Richmond (RIC) | Yes |
| E-ONE, Inc. | Orlando (MCO) | Yes |
| Ferrara Fire Apparatus, Inc. | New Orleans (MSY) | Yes |
| Kovatch Mobile Equipment | Lehigh Valley (ABE) | No |
| Spartan Fire, LLC | Sioux Falls (FSD) | Yes |
| Smeal SFA, LLC | Omaha (OMA) | Yes |
| Smeal LTC, LLC | Omaha (OMA) | Yes |
| Rosenbauer South Dakota, LLC | Sioux Falls (FSD) | Yes |
| Rosenbauer Minnesota, LLC | Minneapolis–St. Paul (MSP) | Yes |
| Investor Defendants and AIP, LLC | LaGuardia (LGA) | Yes |