**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | MDL No. 3179 |

**RESPONSE OF UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS TO DEFENDANTS' MOTION TO TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to Rule 6.1(c) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Plaintiff in the matter of *Unified Government of Wyandotte County and Kansas City, Kansas v. REV Group, Inc., et al.*, Case No. 2:26-cv-02057-JWB-ADM (D. Kan.) ("The UG") respectfully submits this Response to the Motion of Defendants REV Group, Inc., et al. ("Defendants") for Consolidated Pretrial Proceedings.

The UG agrees that centralization is appropriate due to the number of actions already filed, the likelihood of additional actions, the existence of common issues of fact and law, overlapping parties, and likely similarities regarding discovery and expert issues. As shown below, actions have been filed in Kansas, Louisiana, Massachusetts, New Jersey, and Wisconsin (shown in red) on behalf of fire departments in those states, as well as fire departments in California, Maine, Michigan, Missouri, New York, and Pennsylvania (shown in green). Accordingly, the relevant question is where, rather than whether, the case should be centralized.



1

The UG respectfully submits that the actions should be transferred to the United States District Court for the District of Kansas (Kansas City) for coordinated pretrial proceedings. Kansas City, Kansas has been at the forefront of efforts dating back to the aftermath of the Los Angeles wildfires to effect change in the dysfunctional market for fire apparatus. Its fire chief, Dennis Rubin, was one of five witnesses who testified before Congress last September about the crisis.[1] The UG's counsel was one of the others.[2] Kansas City is centrally located and convenient, with daily direct flights to all major metropolitan locations and a newly renovated, award-winning airport.

There are five judges in the District of Kansas, including the Honorable Holly L. Teeter, who has yet to handle a multidistrict litigation. Senior Judge John Lungstrum oversaw *In re Urethane Antitrust Litigation*, which went to trial and involved the remand of certain actions after the conclusion of coordinated pretrial proceedings, and Senior Judge Daniel J. Crabtree oversaw *In re (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, which closed in 2022 following settlements. There are currently no pending MDLs in the District of Kansas.

In the alternative, The UG believes the Northern District of Illinois would be a more convenient forum than the Green Bay Division of the Eastern District of Wisconsin, which is located 122 miles from Milwaukee and a forum that even the resident Defendants consider inconvenient.

---

[1] Testimony for the Record Prepared by Dennis L. Rubin, Fire Chief Kansas City Kansas Fire Department before the Homeland Security and Governmental Affairs Committee, Wednesday, Sept. 10, 2025, "Sounding the Alarm: America's Fire Apparatus Crisis", https://www.hsgac.senate.gov/wp-content/uploads/Rubin-Testimony.pdf.

[2] Testimony for the Record Prepared by Basel Musharbash, Antimonopoly Counsel, before the Homeland Security and Governmental Affairs Committee, Wednesday, Sept. 10, 2025, "Sounding the Alarm: America's Fire Apparatus Crisis", https://www.hsgac.senate.gov/wp-content/uploads/Musharbash-Testimony.pdf.

**BACKGROUND**

As alleged in The UG's Complaint, fire departments throughout the country are facing price increases and delays in acquiring new fire apparatus and getting existing apparatus repaired. Weeks after wildfires devastated portions of Los Angeles, Basel Musharbash—one of the attorneys now representing The UG in this litigation—wrote about skyrocketing prices and longer delivery times that were responsible for sidelining as many as 100 of the Los Angeles Fire Department's 183 fire trucks.[3] This issue attracted the attention of a bipartisan committee in the United States Senate, led by Senators Josh Hawley (MO) and Elizabeth Warren (MA), who sent letters to the major fire apparatus manufacturers seeking information about the crisis. In September 2025, Senators Hawley and Warren called a hearing to elicit testimony about the problems in the industry. Dennis Rubin, Fire Chief of the Kansas City, Kansas Fire Department, and Basel Musharbash testified at that hearing.

Shortly before the Senate hearing, one class action was filed in the Eastern District of Wisconsin, alleging a conspiracy in violation of Sherman Act § 1, and assigned to the Hon. Byron B. Conway in the District's Green Bay Division. Additional actions were filed following the hearing, and there are currently actions in four different districts, including the District of Kansas (collectively, "Related Actions"). All of the actions name REV Group, Oshkosh, and Rosenbauer as defendants, and some name additional defendants. The class actions assert claims on behalf of two different classes of purchasers ("direct" and "indirect"). While they do not all allege the same causes of action, they all share at least one common question of fact.

---

[3] Basel Musharbash, *Did a Private Equity Fire Truck Roll-Up Worsen the L.A. Fires?* (Jan. 25, 2025), https://www.thebignewsletter.com/p/did-a-private-equity-fire-truck-roll (last visited Feb. 11, 2026).

To date, the only issues to be litigated involve venue and class leadership disputes. Several plaintiffs that chose to file outside Wisconsin have since sought to transfer their actions to the Eastern District.

On January 15, 2026, Defendants filed a Motion for Consolidated Proceedings with this Panel, requesting that the cases listed in their Motion be consolidated for pretrial purposes in the Northern District of Illinois. ECF 1. In their Motion, Defendants asserted that "Plaintiffs all bring putative nationwide class action antitrust claims against Defendants alleging the same conspiracies to increase the price of fire trucks." *Id.* at 3.

The UG filed its Complaint in the District of Kansas on January 29, 2026, alleging far more than the "same" conspiracy. The UG also alleges that Defendant REV Group, which was formed by private equity investors, violated Clayton Act § 7 through a series of acquisitions that reduced competition in the market for fire apparatus. *See, e.g.*, ECF No. 38-3 ¶¶ 1-10. The UG seeks damages under state antitrust and consumer protection laws and significant structural relief under federal law to remedy a situation that Chief Rubin called an "epic fire apparatus crisis" in testimony before Congress.[4] *Id.*

On February 4, 2026, Defendants filed a Notice of Potential Tag-Along Action (ECF 38), informing the Court of The UG's Complaint.

**ARGUMENT**

**I.      The UG Does Not Oppose Centralization for Pretrial Purposes**

Pursuant to 28 U.S.C. § 1407(a), civil actions "involving 1 or more common questions of fact" that are pending in a number of districts can be transferred by the Panel "to any district for consolidated or coordinated pretrial proceedings." *Id.* The goal of such consolidation is to promote

---

[4] The UG postponed its filing decision until after its newly elected administration took office. It filed as soon as practical afterward.

convenience for parties and witnesses and the "just and efficient conduct of such actions." *Id.* In this case, there currently are 14 Related Actions, including The UG's action, pending in five different jurisdictions. Defendants moved this Panel for consolidation and transfer pursuant to Section 1407. ECF 1. Two plaintiffs filed motions in their home forums requesting transfer to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a), but those defendants have opposed Section 1404(a) transfer by pointing out jurisdictional issues that would prevent transfer and consolidation in that forum.

The UG generally agrees with Defendants that this litigation is appropriate for centralization and pretrial consolidation pursuant to Section 1407. Defendants REV Group, Oshkosh, and Rosenbauer are named defendants in all of the Related Actions, with additional defendants appearing in some of the Related Actions. While The UG alleges additional facts and legal theories not found in other Related Actions, it agrees that there are one or more common questions of fact. 28 USC § 14017. Centralization would avoid duplicative discovery and possibly conflicting rulings, which could occur if the cases were not centralized and consolidated but instead moved forward in their individual jurisdictions.

While a number of plaintiffs have moved for consolidation in the Eastern District of Wisconsin under Federal Rule of Civil Procedure 42 and others have moved for transfer to that district under Section 1404, The UG maintains that centralization under Section 1407 is the better option. It would prefer to try its action in Kansas City and does not seek transfer to any other location. In addition, The UG anticipates that other affected communities will file suit outside the Eastern District of Wisconsin. In addition, The UG notes that Defendants have vigorously opposed efforts to consolidate and transfer outside the MDL process.

5

II.    **The District of Kansas is an Appropriate Forum for Pretrial Proceedings**

When considering the appropriate venue for pretrial consolidation and transfer of a complex litigation, the Panel analyzes: 1) whether a transferee district has the capacity and resources to handle a complex MDL; 2) whether the district court is "convenient and accessible" to parties and witnesses; 3) the location of witnesses and evidence; 4) the support of the parties for centralization in the district; and 5) the experience of the judge and the district in navigating the complexities that come with multidistrict litigation. *In re Aqueous Film-Forming Foams Prod. Liability Litig.*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018); *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). The District of Kansas meets all of these criteria.

First, the District of Kansas has the capacity and resources to handle a complex MDL. The Panel has previously transferred five major MDLs to the District: *In re Urethane Antitrust Litigation* (MDL 1616), *In re Syngenta AG MIR162 Corn Litigation* (MDL 2591), *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* (MDL 2785), *In re Hill's Pet Nutrition, Inc., Dog Food Products Liability Litigation* (MDL 2887), and *In re Power Morcellator Products Liability Litigation* (MDL 2652). All of these MDLs were based in the Kansas City courthouse and three of the judges who handled them (Judge Lungstrum handled two) remain on the bench. Judge Teeter has not yet handled an MDL but certainly has the skill and background to do so. The District of Kansas thus has the demonstrated experience to efficiently manage an MDL and the resources to handle this one.

Second, Kansas City is convenient and accessible to the parties and witnesses. There are on average 560 passenger flights from Kansas City to 59 non-stop destinations in four countries

6

and 31 U.S states.[5] Airlines flying direct from Kansas City (MCI) include Southwest, Delta, American Airlines and six others.[6] By contrast, Green Bay offers no direct flights to New York or Washington, D.C. where the majority of Defendants' counsel reside. The most common flights to those locations involve layovers in either Chicago or Dallas. Milwaukee's airport is 122 miles from Green Bay, and at last check offers just four non-stop flights to Washington, D.C. (DCA) on a weekday, the last leaving at 5:40 p.m.[7] Green Bay is accessible by train (more than three hours) or car (under two hours).[8]

Third, as Defendants point out, the parties and witnesses have a significant Midwest presence—but no parties are from Illinois and only two plaintiffs are from Wisconsin. Conversely, there are two plaintiffs in the Kansas City area: The UG and Liberty, Missouri. Defendants Pierce and Oshkosh also have dealers located in Kansas. Notably, the Wisconsin-based Defendants do not consider their location to be an important factor in choosing a transferee venue. In addition, many of the allegations date back to the conduct of a New York-based private equity firm (American Industrial Partners or "AIP") that controlled the REV Group until late 2024 when AIP sold most of its shares (after directing the company to issue a special dividend to itself and its investors). *See* ECF No. 38-3 ¶ 42. Those important documents and witnesses may not be in Wisconsin at all.

---

[5] *Direct flights from Kansas City MCI*, DIRECTFLIGHTS.COM, https://www.directflights.com/MCI?utm_source=copilot.com (last visited Feb. 11, 2026).

[6] *Id*.

[7] *Direct flights from Washington to Milwaukee*, DIRECTFLIGHTS.COM, https://www.directflights.com/DCA-MKE (last visited Feb. 11, 2026).

[8] *See, e.g.*, *How to Get from Milwaukee to Green Bay*, Rome2Rio, https://www.rome2rio.com/s/Milwaukee/Green-Bay (last visited Feb. 11, 2026).

Fourth, the support of the parties varies and should be afforded little weight under the circumstances. Defendants favor the Northern District of Illinois for its purported convenience. Some plaintiffs favor the Eastern District of Wisconsin. The UG favors neither.

Fifth, as noted above, the District of Kansas has experience navigating the complexities that come with multidistrict litigation and is currently underutilized as a transferee district. *See In re GoodRx and Pharmacy Benefit Manager Antitrust Litigation (No. II)*, 776 F. Supp. 3d 1346, 1348 (2025) (assigning MDL to District of Rhode Island as an "underutilized" district). Judge Teeter not only has access to the wisdom and experience of judges in the district who have successfully managed MDLs, but she also has a background in engineering and intellectual property litigation that may prove useful depending on how Defendants choose to defend their unlawful conduct.[9]

While The UG maintains that the District of Kansas is the appropriate forum for an MDL, should the Panel agree that this case is appropriate for centralization somewhere other than the District of Kansas, The UG views the Northern District of Illinois as the next-best option and would not object to centralization in that forum.

## CONCLUSION

If the Panel is inclined to grant Defendants' Motion for Consolidated Proceedings, The UG respectfully requests that the Related Actions listed on Schedule A to Defendants' Memorandum of Law, as well as The UG action, be consolidated and transferred to the Honorable Judge Holly L. Teeter, United States District Court Judge for the District of Kansas. In the alternative, The UG does not object to transfer to the Northern District of Illinois as Defendants request.

---

[9] To be clear, The UG considers all of the proposed jurists to be experienced and capable of overseeing this MDL and does not purport to elevate one over any other.

8

Dated: February 11, 2026

Respectfully submitted,

By:  */s/ James R. Martin*
James R. Martin
Jennifer D. Hackett
Sabrina A. Nelson
Noah Wolfenstein
Desmond Sims
ZELLE LLP
1775 Pennsylvania Avenue, NW
Suite 375
Washington, DC 20006
Telephone: (202) 899-4100
Facsimile: (612) 336-9100
jmartin@zellelaw.com
jhackett@zellelaw.com
snelson@zellelaw.com
nwolfenstein@zellelaw.com
dsims@zellelaw.com

Sean M. Sturdivan
Jamie Powell
SANDERS WARREN & RUSSELL LLP
11225 College Blvd, Suite 450
Overland Park, KS 66210
Telephone: (913) 234-6137
Direct: (913) 234-6100
Fax: (913) 234-6199
s.sturdivan@swrllp.com
j.powell@swrllp.com

Basel J. Musharbash
Anureet Sandhu
Domenic Powell
ANTIMONOPOLY COUNSEL
500 Clarksville Street
P.O. Box 795
Paris, Texas 75461
Telephone: (903) 205-8422
Fax: (903) 347-2917
basel@antimonopoly.us
anu@antimonopoly.us
domenic@antimonopoly.us

*Attorneys for Plaintiff the Unified Government of
Wyandotte County and Kansas City, Kansas*

9