**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATON**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGATION | MDL No. 3179 |

**INTERESTED PARTY RESPONSE TO MOTION TO TRANSFER BY PLAINTIFF
EBBETTS PASS FIRE PROTECTION DISTRICT**

Pursuant to Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on

Multidistrict Litigation, Plaintiff in the action *Ebbetts Pass Fire Protection District v. REV*

*Group, Inc., et al.*, No. 26-cv-02926 (C.D. Cal.) respectfully submits this Interested Party

Response to Defendants' Motion to Transfer and Centralize Related Actions for Consolidated

Pretrial Proceedings (ECF No. 1).

**TABLE OF CONTENTS**

I.    Introduction.......................................................................................................... 1

II.   The Panel Should Allow the Ebbetts Pass and County of Los Angeles Actions to Proceed
      Separately from the FAMA Conspiracy Actions............................................... 4

III.  At Most, the Panel Should Consolidate the Ebbetts Pass and County of Los Angeles
      Actions Separately from the FAMA Conspiracy Actions ................................... 10

IV.   In the Alternative, the Panel Should Transfer the Cases to the Honorable Judge Anne
      Hwang in the Central District of California, Western Division ....................... 12

V.    Conclusion .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Abbott Labs, Inc., Similac Prods. Liab. Litig.*,
763 F. Supp. 2d 1376 (J.P.M.L. 2011) ................................................................... 9

*In re Allen Compound Bow Pat. Litig.*,
446 F. Supp. 248 (J.P.M.L. 1978) ......................................................................... 9

*In re Axon Enter., Inc., Body-Worn Camera & Digit. Evidence Mgmt. Sys. Antitrust Litig.*,
776 F. Supp. 3d 1344 (J.P.M.L. 2025) ................................................................. 10

*In re Baby Food Mktg., Sales Practices & Prods. Liab. Litig.*,
544 F. Supp. 3d 1375      (J.P.M.L. 2021) ........................................................... 9

*In re Belviq (Lorcaserin HCI) Prods. Liab. Litig.*,
555 F. Supp. 3d 1369 (J.P.M.L. 2021) ................................................................. 8

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011) ................................................................. 10

*In re FDIC Cal. Prop. Tax Penalties Litig.*,
1999 U.S. Dist. LEXIS 188 (J.P.M.L. Jan. 6, 1999) .............................................. 13

*In re Gasoline Lessee Dealers Antitrust Litig.*,
479 F. Supp. 578 (J.P.M.L. 1979) ......................................................................... 9

*In re Janus Mut. Funds Inv. Litig.*,
310 F. Supp. 2d 1359 (J.P.M.L. 2004) ................................................................. 11

*In re Multidistrict Private Civ. Treble Damage Antitrust Litig. Involving Admission Tickets*,
302 F. Supp. 1339 (J.P.M.L. 1969) ....................................................................... 13

*In re Petroleum Prods. Antitrust Litig.*,
419 F. Supp. 712 (J.P.M.L. 1976) ......................................................................... 13

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020) ................................................................. 9

*In re Uber Techs, Inc., Passenger Sexual Assault Litig.*,
712 F. Supp. 3d 1394 (J.P.M.L. 2024) ................................................................. 8

## I.    Introduction

The Ebbetts Pass Fire Protection District ("Ebbetts Pass" or "Plaintiff")[1]—like the County of Los Angeles, California Plaintiffs, who are represented by the same outside counsel and who filed a similar complaint approximately one month ago in the same district, the Central District of California—oppose centralization of the Ebbetts Pass Action with all of the other actions, for the reasons set forth in the County of Los Angeles Plaintiffs' Interested Party Response, *see* ECF No. 59,[2] and those explained herein.

If the Panel is nonetheless inclined to consolidate the Ebbetts Pass and County of Los Angeles Actions, it should create a separate MDL for them—and any future actions not alleging a horizontal conspiracy among the manufacturer defendants orchestrated by the Fire Apparatus Manufacturers' Association ("FAMA")—in the Central District of California, while consolidating the FAMA conspiracy class actions elsewhere. The two MDL judges can then easily coordinate the two sets of actions informally to the degree required, while avoiding the inefficiencies, delay, and burden that would result from consolidating two substantially different sets of cases before the same judge. In the alternative, all of the actions should be consolidated in the Central District of California, Western Division, before Judge Anne Hwang.

All of the other actions subject to Defendants' Motion to Transfer are primarily Sherman Act Section 1 restraint-of-trade conspiracy class actions. While those actions mention Defendants' mergers and acquisitions *as the backdrop to* their Sherman Act Section 1 conspiracy allegations, and while some of them also formulate their conspiracy claim as a Clayton Act

---

[1] Plaintiff filed its Complaint on March 18, 2026 in the Central District of California. *See* ECF No. 96, Ex. A (Complaint, *Ebbetts Pass Fire Protection District v. REV Group, Inc., et al.*, No. 26-cv-02926 (C.D. Cal. March 18, 2026), ECF No. 1) (hereinafter, "*Ebbetts Pass* Compl.").

[2] The Ebbetts Pass Plaintiffs incorporate by reference as though fully set forth herein the County of Los Angeles Plaintiffs' Interested Party Response (ECF No. 59).

1

Section 7 "Restraint of Trade" claim, they are, through and through, *conspiracy* class actions.[3] The opening paragraphs of the recently filed Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint are illustrative: "[B]eginning in or about January 1, 2016, Manufacturer Defendants and the other Defendants entered into an agreement, combination, or conspiracy to limit the supply, and to fix, raise, maintain, or stabilize prices of Fire Apparatus sold in the United States at supra-competitive levels. As a result of Defendants' unlawful conduct, Plaintiffs and the Class paid artificially inflated prices for Fire Apparatus during the Class Period, and, as a result, have suffered injury in violation of the federal antitrust laws."[4] With the exception of the Kansas Action, they do not list *any* "[c]ommon questions of law and fact" that relate to any alleged unlawful acquisition by any defendant, focusing exclusively on whether there was an alleged conspiracy and whether that conspiracy resulted in higher prices.[5]

The Ebbetts Pass and County of Los Angeles Actions do not allege that a conspiracy among REV Group, Oshkosh, and Rosenbauer entities, facilitated by FAMA, caused higher

---

[3] The one outlier is *Unified Gov't of Wyandotte County and Kansas City, Kansas v. REV Group, Inc., et al.*, No. 2:26-cv-02057 (D. Kan. Jan. 29, 2026) (the "Kansas Action"), which alleges a standalone Clayton Act Section 7 claim against REV Group only. *See id.*, ECF No. 1 at 57-58 ("*Kansas City* Compl."). But unlike the Ebbetts Pass and County of Los Angeles Actions, the Kansas Action dedicates the bulk of its allegations to the alleged FAMA conspiracy, and it does not pursue Clayton Act Section 7 claims against the Oshkosh Defendants or BME Defendants.

[4] Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint, *In re Direct Purchaser Fire Apparatus Antitrust Litig.*, No. 1:25-cv-01252 (E.D. Wis. Mar. 11, 2026), ECF No. 90 ¶ 3 ("*Direct Purchaser* Compl."); *see also City of Revere v. AIP, LLC, et al.*, No. 1:25-cv-13462 (D. Mass. Nov. 19, 2025), ECF No. 1 ¶¶ 6-7 ("*Revere* Compl."); *City of Chelsea v. Fire Apparatus Mfrs.' Ass'n, et al.*, No. 1:25-cv-13643 (D. Mass. Dec. 12, 2025), ECF No. 1 ¶ 1 ("*Chelsea* Compl."); *Borough of Roseland v. Fire Apparatus Mfrs.' Ass'n, et al.*, No. 2:25-cv-18312 (D. N.J. Dec. 9, 2025), ECF No. 1 ¶ 1 ("*Roseland* Compl."); *City of Arcadia v. Am. Indus. Partners, LLC, et al.*, No. 1:25-cv-02005 (E.D. Wis. Dec. 22, 2025), ECF No. 1 ¶ 4 ("*Arcadia* Compl."). Again, the Kansas Action alleges a standalone Clayton Act Section 7 claim. *See Kansas City* Compl. ¶ 2.

[5] *Direct Purchaser* Compl. ¶¶ 237(a)-(k); *see also Revere* Compl. ¶¶ 42(a)-(f); *Chelsea* Compl. ¶¶ 185(a)-(d); *Roseland* Compl. ¶¶ 184(a)-(d); *Arcadia* Compl. ¶¶ 153(a)-(k).

prices. They do not name any Rosenbauer entity or FAMA at all. Instead, they focus solely on (1) serial, *bilateral* mergers and combinations: the AIP and REV Group Defendants' acquisitions of (a) E-ONE, then (b) KME, then (c) Ferrara, and then (d) Spartan Emergency Response; and Oshkosh and Pierce's (a) acquisition of an ownership interest in and combination with Boise Mobile Equipment, Inc. and BME Fire Trucks LLC (the "BME Defendants"), and then (b) their acquisition of Maxi-Métal; and (2) Pierce's anticompetitive conduct in replacement parts markets, which is wholly absent from every other complaint. Indeed, Defendants concede in New Defendants' Interested Party Response (ECF No. 90) that "[t]he LA County action" (and now the Ebbetts Pass Action) are "the only Related Action[s] in which . . . New Defendants are named."[6]

Under these circumstances, efficiencies will be undermined, not gained, by forcing two very different sets of cases into a single MDL.

If the Panel nevertheless concludes centralization is merited, Plaintiff proposes that the Panel centralize pretrial proceedings in two separate MDLs: (1) one for the Ebbetts Pass and County of Los Angeles Actions, and any future actions based on mergers and acquisitions and Pierce's replacement parts conduct, *and not* a FAMA-orchestrated conspiracy among all manufacturer defendants—in the Central District of California, Western Division, before Judge Anne Hwang—and (2) one for the other actions that allege, in the words of the New Defendants,

---

[6]    The new defendants named by the County of Los Angeles, California Plaintiffs (and now Ebbetts Pass) are AIP CF IV, LLC; AIP/CHC Investors, LLC; KME Global, LLC; KME Holdings, LLC; KME RE Holdings LLC; FFA Holdco, Inc.; FFA Acquisition Co., Inc.; Ferrara Fire Apparatus Holding Company, Inc.; Smeal Holding, LLC; Detroit Truck Manufacturing, LLC; Maxi-Métal, Inc.; Boise Mobile Equipment, Inc.; and BME Fire Trucks LLC.

A subset of the New Defendants—namely, those represented by the same counsel who already represent Moving Defendants, and excluding the BME Defendants—filed the "New Defendants' Interested Party Response" (ECF No. 90). Newly named BME Defendants have not appeared in this proceeding or taken a position on transfer.

the "FAMA conspiracy" claims.[7]

Alternatively, if the Panel concludes that all actions should be centralized in a single transferee court, it should transfer them to Judge Hwang in the Central District of California, Western Division, for pretrial proceedings. Two sets of plaintiffs have filed there, one of whom (County of Los Angeles) appears to have made a substantially larger number of purchases than any other named plaintiff. The Central District of California is situated in Los Angeles, California, one of the most accessible and connected cities in the United States, in the state with the greatest number and full array of fire apparatus purchases. And Judge Hwang has already demonstrated an alacrity for fairly and expeditiously managing the County of Los Angeles's case.

**II.    The Panel Should Allow the Ebbetts Pass and County of Los Angeles Actions to Proceed Separately from the FAMA Conspiracy Actions**

As the County of Los Angeles Plaintiffs explained in their Interested Party Response (ECF No. 59), the Ebbetts Pass and County of Los Angeles Actions do not share the same common factual core as the other actions, which focus on an alleged horizontal "hub-and-spoke" conspiracy among REV Group, Oshkosh, and Rosenbauer entities, coordinated through FAMA, to fix fire apparatus prices, restrict output, and share information in violation of Sherman Act Section 1 and analogous state laws. Instead, the Ebbetts Pass and County of Los Angeles Plaintiffs focus on defendants' unlawful mergers and acquisitions, and Pierce's exclusionary conduct in replacement parts markets, and do not allege a horizontal, FAMA-orchestrated conspiracy among the manufacturer defendants.

The New Defendants' argument that the Panel should nevertheless consolidate the

---

[7] *See* ECF No. 90 at 3.

Central District of California actions with the FAMA conspiracy class actions rests on the slender reeds that *some* (but not all) of the defendants overlap, both sets of cases refer to higher prices and mergers and acquisitions, and some of the FAMA conspiracy class actions allege a Clayton Act Section 7 claim.[8] But the New Defendants conspicuously overlook the substantial differences between the two sets of actions.

First, several AIP and REV Group entities and Oshkosh's subsidiary Maxi-Métal believe that they are "New Defendants," named only by the County of Los Angeles Plaintiffs, and are so different and unique from the defendants named in the FAMA conspiracy complaints that they deserve *their own* interested party response. Accordingly, in addition to the Motion and Reply that their co-defendants and same counsel already filed on January 15 and February 18, respectively, the same counsel filed an "Interested Party Response" on behalf of these "New Defendants," emphasizing that "[t]he LA County action is the only Related Action in which the New Defendants are named."[9] These New Defendants then stated in a footnote that "Defendants who originally moved the Panel to transfer and centralize Related Actions in this proceeding, *see* ECF No. 1, support this interested party response."[10] Defendants and their counsel know that it would contravene the Panel's Rules of Procedure to file a surreply in support of their Motion to Transfer. Therefore, in filing a separate interested party response on behalf of the New Defendants, long after the FAMA conspiracy defendants filed their Reply, Defendants have conceded that these New Defendants are new and different.

And indeed, they are. Because the Ebbetts Pass and County of Los Angeles Actions focus

---

[8] *See generally* ECF No. 90.

[9] *Id.* at 1.

[10] *Id.* at 1 n.1.

on mergers and acquisitions, they name as defendants the acquiring and acquired companies. Most notably, while some FAMA conspiracy complaints mention Pierce's acquisition of an ownership interest in the BME Defendants and Oshkosh's acquisition of Maxi-Métal—in multiple cases, *in a single paragraph*[11]—none of the FAMA conspiracy complaints names Boise Mobile Equipment, Inc., BME Fire Trucks LLC, or Maxi-Métal as defendants.

Indeed, none of the FAMA conspiracy complaints that contain a Clayton Act Section 7 claim appears to base the claim on these Oshkosh-family acquisitions at all. While the Kansas action mentions these Oshkosh-family acquisitions each in a single paragraph as background,[12] that plaintiff's Clayton Act Section 7 claim is asserted only against REV Group, and alleges only that REV Group's acquisitions violated any law. Aside from a single paragraph each in the Kansas action, none of the complaints explains *why* these Oshkosh-family acquisitions have substantially lessened competition, as contrasted with more than 65 paragraphs in the Ebbetts Pass and County of Los Angeles complaints explaining how the acquisitions are illegal under controlling Supreme Court precedent and the U.S. Department of Justice and Federal Trade Commission's Merger Guidelines.[13]

Second, and setting aside the procedural concern with Defendants' surreply submitted under the guise of the New Defendants' Interested Party Response, while many of the FAMA conspiracy actions mention mergers and acquisitions, and while some of them list a Clayton Act Section 7 claim, with the exception of the Kansas Action, they appear to be pursuing the *same*

---

[11] *See Direct Purchaser* Compl. ¶ 103; *Arcadia* Compl. ¶ 79.

[12] *See Kansas City* Compl. ¶¶ 51-52.

[13] *See Ebbetts Pass* Compl. ¶¶ 206-272; ECF No. 52, Ex. A ¶¶ 215-280 (Complaint, *People of the State of California, et al. v. REV Group, Inc., et al.*, No. 26-cv-01468 (C.D. Cal. Feb. 12, 2026), ECF No. 1) (hereinafter, "*County of Los Angeles* Compl.").

6

conspiracy claim using a different law: "Restraint of Trade in Violation of Section 7 of the Clayton Act."[14] This is evident by the fact that, again, with the exception of the Kansas Action, their Section 7 causes of action do not identify any allegedly unlawful acquisitions. Instead, they allege that "Defendants['] unlawful conduct, as described above, substantially lessened competition in the market for Fire Apparatus in the United States."[15] That "unlawful conduct, as described above" is the alleged horizontal *conspiracy* that takes up the vast majority of their pleadings. Similarly it appears that the primary reason that several of the FAMA conspiracy plaintiffs mention REV Group's acquisitions is in order to support the inclusion of certain AIP defendants—REV Group's private equity backers—in the alleged conspiracy.[16] Notably, with the exception of the Kansas action, not a single one of the FAMA class actions lists as a question of law or fact common to the class whether any defendant violated Clayton Act Section 7 or whether any defendant engaged in an unlawful acquisition at all.[17]

By contrast, the Ebbetts Pass and County of Los Angeles Plaintiffs do not allege the FAMA conspiracy at all. Instead, they state three separate Clayton Act Section 7 and Sherman

---

[14] *See Direct Purchaser* Compl. Count 2, ¶¶ 249-253 ("Restraint of Trade in Violation of Section 7 of the Clayton Act"); *Revere* Compl. Count 2, ¶¶ 235-239; *Chelsea* Compl. Count 2, ¶¶ 228-229; *Roseland* Compl. Count 2, ¶¶ 227-231. While the City of Arcadia does not label its Clayton Act Section 7 claim a "Restraint of Trade" claim, it bases this claim on Defendants' alleged "coordination" and does not identify any specific acquisition or acquisitions that allegedly violated Clayton Act Section 7, referring instead to "Defendants unlawful conduct of successive acquisitions and coordination." *City of Arcadia* Compl. Count 2, ¶¶ 167-171.

[15] *Direct Purchaser* Compl. ¶ 250; *Revere* Compl. ¶ 236; *Chelsea* Compl. ¶ 229; *Roseland* Compl. ¶ 228. While the City of Arcadia does use the word "acquisitions" in its Clayton Act Section 7 claim, as discussed *supra* n. 11, it does not identify any specific acquisitions that violated Clayton Act Section 7 and bases its Section 7 claim on Defendants' alleged "coordination." *Arcadia* Compl. ¶¶ 168-169.

[16] *See Direct Purchaser* Compl. ¶¶ 34, 46, 78-102, 112; *Revere* Compl. ¶¶ 4-5, 27-28, 56-87; *Arcadia* Compl. ¶¶ 26, 67-77.

[17] *See Direct Purchaser* Compl. ¶ 237; *Revere* Compl. ¶ 42; *Chelsea* Compl. ¶ 185; *Roseland* Compl. ¶ 184; *Arcadia* Compl. ¶ 153.

Act Section 2 (attempted monopolization) claims against three distinct groups of defendants:

- They allege that the AIP and REV Group Defendants violated Clayton Act Section 7 and Sherman Act Section 2 by acquiring E-ONE, KME, Ferrara, and Spartan;

- They allege that Oshkosh and Pierce violated Clayton Act Section 7 and Sherman Act Section 2 by acquiring Maxi-Métal and acquiring an ownership interest in and combining with the BME Defendants; and

- They allege that the BME Defendants violated Clayton Act Section 7 and Sherman Act Section 2 by selling an ownership interest to and combining with Oshkosh and Pierce.

In other words, unlike nearly all of the FAMA conspiracy plaintiffs (with the exception of the Kansas Action), the Ebbetts Pass and County of Los Angeles Plaintiffs do not put all of the manufacturer defendants' acquisitions, along with their alleged conspiracy orchestrated through FAMA, into a single, all-encompassing "Restraint of Trade in Violation of Section 7" claim. And the Kansas Action, which alleges a traditional Clayton Act Section 7 claim, has asserted that claim only against REV Group and not against the AIP Defendants, Oshkosh Defendants, and BME Defendants.[18]

In short, the New Defendants' argument for consolidation rests on a superficial examination of the labels and bare words in the various complaints. A substantive analysis and genuine comparison reveals that "numerous individualized issues overwhelm[] any common factual issues," counseling against centralization. *In re Uber Techs, Inc., Passenger Sexual Assault Litig.*, 712 F. Supp. 3d 1394, 1399 (J.P.M.L. 2024); *see also In re Belviq (Lorcaserin HCI) Prods. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021) ("The record before us

---

[18] *See Kansas City* Compl. ¶¶ 143-148.

indicates that individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL"); *In re Abbott Labs, Inc., Similac Prods. Liab. Litig.*, 763 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) (denying transfer where, "[a]lthough plaintiffs are correct that some factual overlap exists among the present actions, the proponents of centralization have failed to convince us that any shared factual questions in these actions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time").

The New Defendants also argue that the County of Los Angeles Plaintiffs "mischaracterize[d]" the relevant legal standard.[19] But it is the New Defendants who ignore that the mere presence of common questions of fact—even where the majority of the subject actions are nascent—will not necessarily "further the purposes of Section 1407," which is the ultimate inquiry. *See In re Allen Compound Bow Pat. Litig.*, 446 F. Supp. 248, 250 (J.P.M.L. 1978) (declining to centralize six actions, five of which were filed in prior seven months). The Panel has found that the just and efficient conduct of the subject actions may not be promoted by centralizing class actions with individual actions, *see, e.g., In re Axon Enter., Inc., Body-Worn Camera & Digit. Evidence Mgmt. Sys. Antitrust Litig.*, 776 F. Supp. 3d 1344, 1345 (J.P.M.L. 2025), or by centralizing claims brought under different provisions of the antitrust laws against defendants in the same industry. *See In re Gasoline Lessee Dealers Antitrust Litig.*, 479 F. Supp. 578, 580 (J.P.M.L. 1979). Indeed, the Panel has repeatedly found that the creation of "industry-wide MDLs," as the defendants propose, may "complicate pretrial proceedings more than it would streamline them." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020); *see also In re Baby Food Mktg., Sales Practices & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021) ("We have been cautious when considering industry-wide

---

[19] ECF No. 90 at 10.

centralization."). The Panel has emphasized that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Centralization of the Ebbetts Pass and County of Los Angeles Actions with class actions based on disparate facts and legal claims risks delaying the urgently needed remedies Plaintiff seeks, thereby undermining— not furthering—the purposes of Section 1407.

Finally, all of this is not to mention the other glaring difference between the Ebbetts Pass and County of Los Angeles Actions, and the FAMA conspiracy actions: the latter do not include any claims against Pierce for monopolizing and restraining trade in replacement parts markets. These claims are no afterthought. They take up more than 35 paragraphs of the Ebbetts Pass and County of Los Angeles complaints and underlie five separate causes of action for violation of Sherman Act Section 2; Clayton Act Section 3; the California Cartwright Act, Cal. Bus. & Prof. Code Sections 16720 and 16727; and the California Unfair Competition Law. They will require discovery from Oshkosh, Pierce, parts dealers, third-party manufacturers that supply Pierce with white-label parts, and other third parties who are completely unimplicated by the FAMA conspiracy plaintiffs' claims. The Pierce replacement parts claims are a stand-alone reason to let the Ebbetts Pass and County of Los Angeles Actions proceed separately.

### III. At Most, the Panel Should Consolidate the Ebbetts Pass and County of Los Angeles Actions Separately from the FAMA Conspiracy Actions

As discussed, centralization of the Ebbetts Pass and County of Los Angeles Actions with the FAMA conspiracy actions will not promote the just and efficient conduct of pretrial proceedings. Indeed, as the foregoing discussion reveals, the actions before the Panel are readily separable into two distinct sets. One set, the Ebbetts Pass and County of Los Angeles Actions, focus squarely on allegations that Defendants carried out unlawful mergers and acquisitions,

substantially lessening competition in several relevant fire apparatus and custom chassis markets, and that Pierce monopolized replacement parts markets, without any allegations of horizontal coordination. The other set, the FAMA conspiracy actions, focus instead on an alleged horizontal conspiracy among all defendants, coordinated through FAMA, thereby violating Section 1 of the Sherman Act (and, according to some of the plaintiffs, Clayton Act Section 7). The two sets of actions are readily distinguishable, and all parties would benefit from a transferee court focused solely on the distinct factual and legal issues relevant to each respective set of actions. Any risk of duplicative labor could easily be avoided through informal coordination.

Plaintiff therefore proposes that the Panel centralize the Ebbetts Pass Action, the County of Los Angeles Action, and any future action that does not allege a horizontal conspiracy before Judge Hwang in the Central District of California, Western Division, separate from any MDL composed of the FAMA conspiracy actions. *See, e.g., In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361-1362 (J.P.M.L. 2004) (transferring actions to multiple transferee judges).

Indeed, Judge Hwang has already taken an active role in managing the cases before her. On Friday, March 6, 2026—one week before some defendants' responses to the County of Los Angeles complaint were due—the defendants in the County of Los Angeles Action filed an "*ex parte* application" to extend their time to respond to the complaint until May 8, 2026, on the incorrect basis that Maxi-Métal—on whose behalf its U.S. counsel signed a waiver of service transmitted to counsel on February 20, 2026—had 90 days, rather than 60, to respond to the complaint. Three court days later, Judge Hwang denied the *ex parte* application. Judge Hwang noted that, while "the *ex parte* application requests extensions to May 21 to 'align[] with Defendant Maxi-Métal, Inc.'s . . . deadline to respond . . . [of] May 21, 2026,' . . . . Defendant

11

Maxi-Métal, Inc.'s deadline to respond is April 21, 2026," not May 21, 2026.[20] Judge Hwang

therefore held: "Defendants have not established sufficient good cause with specificity for a

further extension of the responsive pleading deadlines."[21] In light of the Panel's March 26, 2026

hearing date, the court independently continued all defendants' response deadlines to April 21,

2026. In short, Judge Hwang has already demonstrated an ability to sift quickly through

meritorious and unmeritorious arguments advanced in expedited motions and to manage the

dockets of these cases in light of proceedings outside of her court.

### IV.    In the Alternative, the Panel Should Transfer the Cases to the Honorable Judge Anne Hwang in the Central District of California, Western Division

In the alternative, if the Panel nevertheless concludes centralization is merited, Plaintiff

Ebbetts Pass joins the County of Los Angeles Plaintiffs in their request for transfer to Judge

Hwang of the Central District of California, Western Division, and incorporates by reference the

County of Los Angeles' arguments therefor.[22] The addition of Ebbetts Pass as a plaintiff further

militates in favor of transfer to the Central District of California, where both Ebbetts Pass and the

County of Los Angeles have filed their complaints. Together, Plaintiff Ebbetts Pass and the

County of Los Angeles Plaintiffs maintain over 1,600 apparatuses in total and have purchased

over 100 fire apparatuses manufactured by a REV Group, Oshkosh, BME, or Rosenbauer

entity.[23]

The New Defendants argue the Panel should disregard the disproportionate fleet size and

---

[20] *People of the State of California, et al. v. REV Group, Inc., et al.*, No. 2:26-cv-01468 (C.D. Cal. Mar. 11, 2026), ECF No. 64 at 2 n. 1.

[21] *Id.* at 2.

[22] See ECF No. 59 (*County of Los Angeles* Interested Party Response) § III.

[23] *See Ebbetts Pass* Compl. ¶¶ 23, 311; ECF No. 52, Ex. A (*County of Los Angeles* Compl.) ¶¶ 26, 320-331.

purchase volumes of the County of Los Angeles Plaintiffs compared to other plaintiffs subject to Defendants' motion to transfer, but their argument rests on a comparison between populations of California, New York, and Texas, not the damages actually alleged by plaintiffs currently subject to any potential transfer order.[24] Considering the outsized stake of Plaintiff Ebbetts Pass and the County of Los Angeles Plaintiffs together, both due to their disproportionate share of relevant purchases and the variety of apparatuses used in California, the Central District of California is the clear center of gravity of a potential MDL at this time. *See In re Multidistrict Private Civ. Treble Damage Antitrust Litig. Involving Admission Tickets*, 302 F. Supp. 1339, 1341 (J.P.M.L. 1969) (highlighting disproportionate share of total damages alleged in actions pending in transferee forum); *In re FDIC Cal. Prop. Tax Penalties Litig.*, 1999 U.S. Dist. LEXIS 188, at *3 (J.P.M.L. Jan. 6, 1999) (same); *In re Petroleum Prods. Antitrust Litig.*, 419 F. Supp. 712, 719 (J.P.M.L. 1976) (highlighting centrality of forum state to relevant industry).

## V.      Conclusion

For the foregoing reasons, the Ebbetts Pass and County of Los Angeles Actions should not be centralized with the FAMA conspiracy actions that are the subject of Defendants' Motion to Transfer. Alternatively, the Ebbetts Pass and County of Los Angeles Actions, along with any future actions complaining of mergers and acquisitions and Pierce replacement parts conduct, and *not* a horizontal conspiracy among all of the manufacturer defendants orchestrated by FAMA, should be centralized before Judge Anne Hwang in the Central District of California, Western Division, either exclusively or—if the Panel is inclined to centralize all of the actions in one forum—with the FAMA conspiracy actions.

---

[24] *See* ECF No. 90 at 14.

Dated: March 19, 2026

John P. Fiske
Lindsay Stevens
**BARON & BUDD, P.C.**
11440 West Bernardo Court,
Suite 265
San Diego, CA 92127
Tel: (858) 251-7424
Fax: (214) 523-6600
jfiske@baronbudd.com
lstevens@baronbudd.com

Respectfully Submitted,

/s/ Catherine S. Simonsen

Catherine S. Simonsen
Thomas G. Mattes
**SIMONSEN SUSSMAN LLP**
418 Bamboo Lane
Suite C-18
Los Angeles, CA 90012
Tel: (917) 747-5196
Fax: (913) 262-0058
catherine@simonsensussman.com
thomas.mattes@simonsensussman.com

Nicolas A. Stebinger
Victoria R. Sims
**SIMONSEN SUSSMAN LLP**
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (202) 384-3130
Fax: (913) 262-0058
nicolas@simonsensussman.com
victoria.sims@simonsensussman.com

Shaoul Sussman
Nico Gurian
Paul M. Goodrich
**SIMONSEN SUSSMAN LLP**
307 West 38th Street, 16th Floor
New York, NY 10018
Tel: (646) 693-3929
Fax: (913) 262-0058
shaoul@simonsensussman.com
nico.gurian@simonsensussman.com
paul.goodrich@simonsensussman.com

*Counsel for Plaintiff Ebbetts Pass Fire
Protection District*

14