**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: FIRE APPARATUS ANTITRUST LITIGAITON | MDL No. 3179 |

**INTERESTED PARTY RESPONSE IN SUPPORT OF MOTION FOR
CONSOLIDATION AND TRANSFER PURSUANT TO 28 U.S.C. § 1407**

Plaintiff City of Shawnee, Oklahoma, (hereafter "Plaintiff") respectfully submits its response in support of pretrial coordination and transfer pursuant to 28 U.S.C. § 1407. Plaintiff respectfully submits that the arguments presented for the establishment of an MDL proceeding in this matter have been more than adequately briefed. To avoid duplication, and in the interest of judicial economy, Plaintiff adopts all the arguments in favor of consolidation under 28 U.S.C. § 1407 and refrains from submitting duplicative arguments herein. However, Plaintiff submits that the Western District of Oklahoma would be the best forum for coordination and consolidation of this litigation.

**THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA IS THE MOST APPROPRIATE FORUM
FOR CONSOLIDATION AND COORDINATION.**

The Panel repeatedly emphasizes that the relevant inquiry is whether the chosen district will serve *the convenience of the parties and witnesses* and *promote the just and efficient conduct of the litigation*.[1] It also looks to overall convenience, not the preferences or burdens of any single party in isolation.[2] The Western District of Oklahoma best serves Section 1407's convenience-and-efficiency objectives. In selecting the Western District of Oklahoma in the Samsung top-load washer MDL, the JPML noted that the district "provides a convenient and accessible forum" for

---

[1] Karen K. Caldwell, Inside the JPML, 108 Judicature 52 (2024).
[2] *Id.*

nationwide litigation and is "centrally located relative to the geographically dispersed domestic defendants."[3]

The Western District of Oklahoma provides a convenient and efficient forum for the MDL. Geographically, Western District of Oklahoma is in the best central location for a nationwide litigation.  Oklahoma City currently provides daily, non-stop flights to major airports throughout the United States including the metropolitan areas of Los Angeles, New York City, Chicago, Houston, and Atlanta, among many others.  Will Rogers World Airport is only ten (10) miles from downtown Oklahoma City, where the courthouse is located, with an average travel time of eighteen (18) minutes



.

What adds to the desirability of Oklahoma City as the forum is the public transportation and the ease of navigating the downtown area as well as the Bricktown area, a major entertainment

---

[3] *In Re: Samsung Top-Load Washing Machine Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2792, Transfer Order, at 2 (J.P.M.L. October 4, 2017).

center. The area near the courthouse is serviced by a trolly service that departs each station approximately every 12- 15 minutes. As the Figure above shows, there are seven (7) Four-Star hotels within a 1 to 3 minute walk of the trolley car. All are in very close proximity to the courthouse, as well as the Paycom Center, where the NBA national champion, Oklahoma City Thunder, plays.

Furthermore, Oklahoma City offers extremely affordable lodging for the parties. In 2024, the average nightly hotel price in Oklahoma City was $100.46, over 50% lower than the national average of $158.67 for the same period.[4] Therefore, many of the other suggested venues are not only geographically inconvenient but would be more expensive for attorneys and witnesses traveling from multiple regions.

Moreover, the Western District of Oklahoma is the district that best serves *overall convenience* and *practical case management efficiency*, not merely as one more "central" district on a map.  It offers the same geographic accessibility as some of the other proposed districts, but with materially greater litigation-management benefits: a docket load that supports the *efficient* conduct of the pretrial phase of the litigation; a stronger nexus to the underlying events and affected entities, as Oklahoma, and the area in which Western District is seated, routinely suffer from wild fires; and a forum the JPML has already recognized a sensible national coordination venue.

The Western District of Oklahoma currently has no MDL proceedings pending. Therefore, it has a current caseload that would allow the district to oversee a multidistrict litigation proceeding in the more efficient manner than any of the other districts requested.  The Western District of Oklahoma has resources available to oversee the efficient management of the instant MDL proceeding.

---

[4] https://www.costar.com/products/str-benchmark/resources/press-releases/us-hotel-adr-and-revpar-grew-lowest-rate-2020

Moreover, this case has a strong nexus to the Western District of Oklahoma. Oklahoma is prone to destructive wildfires driven by extreme fire weather and high winds. The last major wildfire event was in March 14-25, 2025, where Oklahoma Department of Emergency Management reported more than 130 fires across 44 counties on March 14 alone, and the Governor declared a state of emergency in 12 counties the next day.[5] The previous year, in February 2024, Oklahoma Forestry Services reported that the outbreak of wildfires in one occasion had burned about 152,294 acres statewide.[6] Therefore, the disrupted availability of fire trucks and firefighting equipment had devastating consequences in Oklahoma.

The consolidated action can be assigned to Honorable Timothy D. DeGiusti, who is overseeing the case of Movants –*City of Shawnee, Oklahoma et al. vs. Oshkosh Corporation et al.* that was recently filed in the Western District.  Judge DeGiusti is an excellent and capable jurist who presided over the Samsung top-load washer MDL –*In Re: Samsung Top-Load Washing Machine Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2792.

In the alternative, the MDL can be assigned to Honorable Bernard Jones. Judge Jones was appointed as the first African American U.S. magistrate in the Western District in 2015 and was confirmed as a district judge in 2019.  His confirmation was notably strong: the Senate confirmed him by a 91–3 vote, which is a substantial bipartisan margin for a federal judicial nominee and is the evidence of broad professional and institutional confidence in his qualifications.

Before joining the federal bench, Judge Jones built a substantial judicial record at the state level. He served as a District Judge in Oklahoma County, had oversight roles connected to a variety of legal and social issues, and provided substantial service to the bench and bar outside his judicial

---

[5] https://oklahoma.gov/oem/news/newsroom/wildfire-situation-update-1---mar-14-2025.html?utm_source=chatgpt.com

[6] https://oklahoma.gov/oem/emergencies-and-disasters/2024/february-27-wildfire-event/may-19-severe-weather.html

docket. Judge Jones's record supports a narrative of versatility, docket-management skill, and practical courtroom experience.

Judge Jones's appointment is in line with the Panel's goals to expand the reach of MDL courts, as he has not previously presided over an MDL. In recent years, the "JPML has made a concerted effort to diversify the ranks of transferee courts and judges that handle MDLs."[7] It has therefore made a concerted effort to transfer cases to first-time MDL judges such as Judge Jones. This practice is aimed at bringing "new perspectives and innovation into MDL practice. As more judges take on MDLs in more courts around the nation, the feeling was that they would open opportunities for more attorneys to take on divergent roles in leadership."[8]

As the Honorable Judge Karen Caldwell, the JPML Chairwoman, has noted, the Panel seeks to "broaden" its bench of transferee judges.[9]

> We do not merely assign MDLs to a small group of judges who already have had MDL experience. Instead, we look at the experience of the judges we are considering, their willingness to take on additional work, and their workload as well as the workload of their district. We regularly survey district judges to ascertain their interest in and capacity to handle an MDL.[10]

Assigning this MDL to Judge Jones fulfills all the goals cited by Judge Caldwell. It especially serves the interest of diversity that many in the legal community advocate as it relates to MDLs.[11]

---

[7] David L. Noll & Adam S. Zimmerman, *Diversity and Complexity in MDL Leadership: A Status Report from Case Management Orders,* TEX. L. REV. 1679, 1695 (2023).

[8] *Id.*

[9] Karen K. Caldwell, Inside the JPML, 108 Judicature 52 (2024), at 80.

[10] *Id.*

[11] David L. Noll & Adam S. Zimmerman, *Diversity and Complexity in MDL Leadership: A Status Report from Case Management Orders,* TEX. L. REV. 1679, 1692 (2023).

## **CONCLUSION**

Western District of Oklahoma is not just geographically central; it is a proven, practical MDL forum for nationwide cases, and its selection as the forum for this litigation serves the purposes of Section 1407. Accordingly, the Plaintiff requests that the Panel transfer any established MDL action herein to the Western District of Oklahoma for coordinated pretrial proceedings, and be assigned to either Judge Timothy DeGiusti, or Judge Bernard Jones.

**DATED:** This 19th day of March, 2026.

Respectfully Submitted,


By: */s/ Matthew J. Sill*
MATTHEW J. SILL
FULMER SILL, PLLC
14005 N. Eastern Avenue
Edmond, Oklahoma 73013
Telephone: (405) 509-6300
Facsimile: (405) 509-6268
Matt@Sill-Law.com

6